

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | Criminal No. |
| v. | |
| DAVID M. YOUNG, M.D. (01) | 3-21CR0417-X |

# INDICTMENT

The Grand Jury charges that:

## General Allegations

At all times material to this indictment,

### The Defendant

1.  In or around the charged period, **David Young**, a resident of Fredericksburg, Texas, was a licensed medical doctor. **David Young** was an enrolled Medicare provider who signed prescriptions and other Medicare-required documents for certain tests and medical devices, as **David Young** knew and intended, that were, among other things, medically unnecessary, ineligible for Medicare reimbursement, not provided as represented, and induced through unlawful kickbacks and bribes. **David Young** worked as an independent contractor for purported telemedicine and marketing companies, described below.

### Related Individuals and Entities

2.  In or around the charged period:

    a. Sunrise Medical, Inc. ("Sunrise"), RAS Marketing Services, Inc. ("RAS"),

Indictment—Page 1

STK Marketing, Inc. ("STK"), Nationwide Call Centers, Inc. d/b/a Luxury Lifestyles ("Nationwide"), and Sunrise Medical Marketing, Inc. ("Sunrise Marketing") were all Florida business entities purportedly providing telemedicine services.

 b. Steven Kahn, a United States citizen who resided in Florida, co-owned and controlled Sunrise, RAS, STK, Nationwide, and Sunrise Marketing (collectively, "Sunrise").

 c. Company A and Company B were Georgia business entities purportedly providing telemedicine and staffing services.

 d. Company C was a Florida business entity that purported to market genetic testing to Medicare beneficiaries.

 e. The following individuals were marketers and patient recruiters for Company C: Matthew Harrington, a United States citizen who resided in Florida; Miranda Harrington, a United States citizen who resided in Florida; and Michael Speer, a United States citizen who resided in Georgia.

### Health Insurance Programs

3. The Medicare Program ("Medicare") was a federal health care program providing benefits to individuals who were the age of 65, or older, or disabled. The benefits available under Medicare were governed by federal statutes and regulations. Individuals who received benefits under Medicare were commonly referred to as Medicare "beneficiaries."

4. Medicare was a "health care benefit program," as defined by Title 18, United States Code, Section 24(b), and a "Federal health care program," as defined by

Title 42, United States Code, Section 1320a-7b(f).

5. Medicare covered, among other things, medical services provided by physicians, medical clinics, laboratories, and other qualified health care providers, and office services and outpatient care—including the ordering of durable medical equipment, prosthetics, orthotics, and supplies ("DME"), and diagnostic testing—that were medically necessary and ordered by licensed medical doctors or other qualified health care providers.

6. Physicians, clinics, laboratories, and other health care providers that provided services to Medicare beneficiaries were able to apply for and obtain a "provider number." A health care provider that received a Medicare provider number was able to file claims with Medicare to obtain reimbursement for services provided to beneficiaries.

7. To receive Medicare reimbursement, providers had to apply and execute a written provider agreement, known as CMS Form 855. The Medicare application was required to be signed by an authorized representative of the provider. The application contained certifications that the provider agreed to abide by the Medicare laws and regulations, including the Federal Anti-Kickback Statute, and that the provider "will not knowingly present or cause to be presented a false or fraudulent claim for payment by Medicare and will not submit claims with deliberate ignorance or reckless disregard of their truth or falsity."

8. Medicare paid for claims only if the items or services were medically reasonable, medically necessary for the treatment or diagnosis of the beneficiary's illness or injury, documented, and actually provided as represented to Medicare. Medicare

would not pay for items or services that were procured through kickbacks and bribes.

## Durable Medical Equipment

9. Medicare covered a beneficiary's access to DME, such as off-the-shelf ("OTS") ankle braces, knee braces, back braces, elbow braces, wrist braces, and hand braces (collectively, "orthotic braces"). OTS braces require minimal self-adjustment for appropriate use and do not require expertise in trimming, bending, molding, assembling, or customizing to fit the individual.

10. A claim for DME submitted to Medicare qualified for reimbursement only if it was medically necessary for the treatment of the beneficiary's illness or injury and prescribed by a licensed physician.

## Genetic Tests

11. Cancer genomic ("CGx") testing used DNA sequencing to detect mutations in genes that could indicate a higher risk of developing certain types of cancers in the future. Pharmacogenetic ("PGx") tests were laboratory tests that used DNA sequencing to assess how the body's genetic makeup would affect the response to certain medications. Genetic tests that could predict future risks of cardiac conditions and diseases such as Parkinson's and Alzheimer's were also available. All such tests were generally referred to as "genetic testing." Genetic testing was not a method of diagnosing whether an individual had a disease, such as cancer, at the time of the test.

12. To conduct genetic testing, a laboratory needed to obtain a DNA sample ("specimen") from the patient. Specimens were typically obtained from the patient's saliva by using a cheek swab to collect sufficient cells to provide a genetic profile. The

Indictment—Page 4

specimen was then submitted to the laboratory to conduct a genetic test.

13. DNA specimens were submitted along with laboratory requisition forms that identified the patient, the patient's insurance, and the specific test to be performed. In order for laboratories to submit claims to Medicare for genetic tests, the tests had to be approved by a physician or other authorized medical professional who attested to the medical necessity of the test.

14. Medicare did not cover diagnostic testing that was "not reasonable and necessary for the diagnosis or treatment of illness or injury or to improve the functioning of a malformed body member." Title 42, United States Code, Section 1395y(a)(1)(A). Except for certain statutory exceptions, Medicare did not cover "examinations performed for a purpose other than treatment or diagnosis of a specific illness, symptoms, complaint or injury." Title 42, Code of Federal Regulations, Section 411.15(a)(1).

15. If diagnostic testing was necessary for the diagnosis or treatment of illness or injury or to improve the functioning of a malformed body member, Medicare imposed additional requirements before covering the testing. Title 42, Code of Federal Regulations, Section 410.32(a) provided that "all diagnostic x-ray tests, diagnostic laboratory tests, and other diagnostic tests must be ordered by the physician who is treating the beneficiary, that is, the physician who furnishes a consultation or treats a beneficiary for a specific medical problem and who uses the results in the management of the beneficiary's specific medical problem." "Tests not ordered by the physician who is treating the beneficiary are not reasonable and necessary."

## The Fraudulent Scheme

### Overview of the Scheme

16.     **David Young** unlawfully caused to be submitted false and fraudulent claims to federal health care benefit programs for prescriptions for genetic testing and orthotic braces without examining or speaking to beneficiaries and without any physician-patient relationship.  Federal health care benefit programs paid millions of dollars on these false and fraudulent claims.  These completed, signed prescriptions and other Medicare-required documents (collectively referred to as "doctors' orders") for genetic testing or orthotic braces, as **David Young** knew and intended, were, among other things, medically unnecessary, ineligible for Medicare reimbursement, not provided as represented, and induced through unlawful kickbacks and bribes.

17.     Over the course of, and in furtherance of, the fraudulent scheme, which began no later than in or around August 2016 and continued until in or around August 2019, the exact dates being unknown to the Grand Jury, **David Young**, and others known and unknown to the Grand Jury, caused the submission of false and fraudulent claims to Medicare for genetic testing and orthotic braces in at least the approximate amount of $39.6 million.

### Object/Purpose of the Scheme

18.     The object/purpose of the scheme was for **David Young**, his co-conspirators Steven Kahn, Matthew Harrington, Miranda Harrington, Michael Speer, and others known and unknown to the Grand Jury, to unlawfully enrich themselves and others by, among other things: (a) soliciting, receiving, offering, and paying kickbacks and

Indictment—Page 6

bribes in exchange for ordering and arranging for the ordering of genetic tests and orthotic braces that were not legitimately prescribed, not needed, or not used; (b) submitting and causing the submission of false and fraudulent claims to Medicare for genetic testing and orthotic braces that were not medically necessary, ineligible for reimbursement, and not provided as represented; (c) concealing the submission of false and fraudulent claims to Medicare, the receipt and transfer of the proceeds of the fraud, and the receipt and payments of kickbacks and bribes; and (d) diverting proceeds of the fraud for their personal use and benefit, for the use and benefit of others, and to further the fraud.

### Manner and Means of the Scheme

19.     In or around May 2017, **David Young**, as a Medicare provider, promised to comply with all Medicare rules and regulations, and federal laws, including that he would not knowingly present or cause to be presented false and fraudulent claims for payment by Medicare and that he would comply with the Federal Anti-Kickback Statute. Despite these certifications, **David Young** proceeded to present or cause to be presented false and fraudulent claims for payment by Medicare as described below.

20.     **David Young** and his co-conspirators gained access to Medicare beneficiaries' insurance information and genetic specimens through various means of solicitation, including approaching beneficiaries at their homes, telemarketing campaigns, and appearing at health fairs.

21.     **David Young** worked as an independent contractor for various purported telemedicine and staffing companies, including Sunrise, Company A, Company B,

Company C, and others, that arranged for physicians to prescribe genetic testing and orthotic braces for Medicare beneficiaries.

22.     **David Young** signed doctors' orders for genetic testing that was medically unnecessary, not provided as represented, and not eligible for Medicare reimbursement. **David Young** signed doctors' orders for Medicare beneficiaries even though: he was not treating the beneficiaries for cancer, symptoms of cancer, or any other medical condition; he did not use the test results in the treatment of the beneficiaries or the management of their care; he did not conduct a patient visit or consultation that would justify approval of the orders for genetic tests and, in many instances, never spoke with the beneficiaries; he did not obtain or review the beneficiaries' medical records or otherwise evaluate their purported personal and family medical conditions; and he did not provide the results of the genetic tests to Medicare beneficiaries, who frequently never received the results of these tests.

23.     **David Young** signed doctors' orders for DME that was medically unnecessary, not provided as represented, and not eligible for Medicare reimbursement. **David Young** signed doctors' orders for Medicare beneficiaries without seeing, speaking to, or otherwise communicating with or examining them; with whom he lacked a pre-existing doctor-patient relationship; and without regard to whether beneficiaries needed the orthotic braces.

24.     **David Young** agreed with his co-conspirators to sign doctors' orders for genetic testing and orthotic braces for Medicare beneficiaries in exchange for approximately $30-$50 per purported telemedicine "consultation" and to provide few, if

any, medical treatment options for beneficiaries besides genetic testing or orthotic braces during the purported telemedicine "consultations."

25. Upon receipt of the physician-signed orders, laboratories that processed genetic testing and DME suppliers that provided orthotic braces to beneficiaries then submitted claims to Medicare for the orders prescribed by **David Young**.

26. **David Young** made, and caused to be made, false entries in beneficiaries' orders for orthotic braces and genetic testing, including statements that the beneficiaries needed the braces and tests, and that **David Young** consulted with and/or examined the beneficiaries to substantiate the false claims, knowing that the statements were untrue.

27. **David Young** transmitted signed doctors' orders for genetic testing and orthotic braces to his co-conspirators knowing that the orders, along with the beneficiaries' specimens, would be provided to laboratories and DME suppliers for the purpose of submitting and causing the submission of false and fraudulent claims to Medicare.

28. Neither **David Young** nor the telemedicine and marketing companies billed Medicare for telemedicine consultations with beneficiaries, but instead the telemedicine and marketing companies and others solicited kickbacks and bribes from brace suppliers and laboratories for doctors' orders that were signed by **David Young** and others.

29. To increase revenue for themselves and their co-conspirators, the telemedicine and marketing companies, including Sunrise, Company A, Company B, and Company C, paid or caused payments to be made to **David Young** and others to sign doctor's orders for genetic testing and orthotic braces and caused the submission of

claims that were medically unnecessary, ineligible for Medicare reimbursement, and not provided as represented.

30. **David Young** and others falsified, fabricated, altered, and caused the falsification, fabrication, and alteration of patient files, orders, and other records, all to support claims to Medicare that were obtained through kickbacks and bribes, medically unnecessary, ineligible for Medicare reimbursement, and not provided as represented.

31. **David Young** and others concealed and disguised the scheme by preparing and causing to be prepared false and fraudulent documentation, and submitting and causing the submission of false and fraudulent documentation to Medicare, including documentation in patient files and orders in which:

   a. **David Young** falsely stated that he determined through his interaction with the Medicare beneficiary that a particular course of treatment, including the prescription of orthotic braces and/or genetic testing, was reasonable and medically necessary;

   b. **David Young** falsely stated that the Medicare beneficiary was provided information regarding follow-up medical treatment;

   c. **David Young** falsely stated that he counseled the Medicare beneficiary to consult with a pain management physician;

   d. **David Young** falsely attested that the information in the medical record was true, accurate, and complete;

   e. **David Young** falsely diagnosed the Medicare beneficiary with certain conditions to support the prescription of certain braces and/or genetic tests;

f.  **David Young** concealed the fact that his interaction with the Medicare beneficiary was brief and telephonic, if at all; and

g.  **David Young** falsely represented that he had performed certain diagnostic tests prior to ordering braces.

32.  **David Young** and others submitted and caused the submission of false and fraudulent claims to Medicare in excess of approximately $39.6 million for orthotic braces and genetic tests that were procured through the payment of kickbacks and bribes, medically unnecessary, ineligible for Medicare reimbursement, and not provided as represented, for which Medicare paid approximately $13.9 million.

33.  In furtherance of the scheme, and to accomplish its purpose, the conspirators submitted and caused to be submitted the false and fraudulent claims reflected in Counts Two through Four.

## COUNT ONE
### Conspiracy to Commit Health Care Fraud
### (Violation of 18 U.S.C. § 1349 (18 U.S.C. § 1347))

34.  The Grand Jury re-alleges and incorporates by reference Paragraphs 1 through 17 as if fully alleged herein.

### The Conspiracy

35.  From in or around August 2016, and continuing through in or around August 2019, the exact dates being unknown to the Grand Jury, in the Dallas Division of the Northern District of Texas, and elsewhere, **David Young** did knowingly and willfully combine, conspire, confederate, and agree with Steven Kahn, Matthew Harrington, Miranda Harrington, Michael Speer, and other persons known and unknown to the Grand

Indictment—Page 11

Jury, to violate 18 U.S.C. § 1347, that is, to knowingly and willfully execute, and attempt to execute, a scheme and artifice to defraud a health care benefit program affecting interstate commerce, as defined in 18 U.S.C. § 24(b), that is, Medicare, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, said health care benefit program, in connection with the delivery of and payment for health care benefits, items, or services.

### The Object/Purpose of the Conspiracy

36. The Grand Jury re-alleges and incorporates paragraph 18 as a description of the object/purpose of the conspiracy.

### The Manner and Means of the Conspiracy

37. In furtherance of the conspiracy and to accomplish its object/purpose, the methods, manners, and means that were used are described in paragraphs 19 through 33 and incorporated by reference as though set forth fully therein.

All in violation of Title 18, United States Code, Section 1349.

### COUNTS TWO THROUGH FOUR
### False Statements Relating to Health Care Matters
### (Violation of 18 U.S.C. §§ 1035(a) and 2)

38. The Grand Jury re-alleges and incorporates by reference Paragraphs 1 through 33 as if fully alleged herein.

39. On or about the dates specified below, in the Dallas Division of the Northern District of Texas, and elsewhere, **David Young**, in a matter involving a health care benefit program, specifically Medicare, did knowingly and willfully (a) falsify,

conceal, and cover up by trick, scheme, and device material facts, and (b) make materially false, fictitious, and fraudulent statements and representations, and make and use materially false writings and documents, knowing the same to contain materially false, fictitious, and fraudulent statements and entries, in connection with the delivery of and payment for health care benefits, items, and services:

| Count | Approximate Date | Medicare Beneficiary | Record Containing False Statements and/or Concealment of Material Facts |
|---|---|---|---|
| 2 | 2/5/2019 | D.I. | Medical records and detailed written orders for back brace and wrist brace |
| 3 | 2/7/2019 | S.T. | Medical records and detailed written orders for back brace, wrist brace, and shoulder brace |
| 4 | 2/7/2019 | K.A. | Medical records and detailed written orders for back brace, knee brace, and shoulder brace |

Each in violation of Title 18, United States Code, Sections 1035(a) and 2.

## Forfeiture Notice
### (18 U.S.C. § 982(a)(7))

40. Pursuant to 18 U.S.C. § 982(a)(7), upon conviction of Counts One through Four, **David Young** shall forfeit to the United States, any property, real or personal, which constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the offense.

41. Pursuant to 21 U.S.C. § 853(p), as incorporated by 28 U.S.C. § 2461(c), if any of the property described above, as a result of any act or omission of a defendant:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred, sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be divided without difficulty,

the United States intends to seek forfeiture of any other property of the defendant up to the value of the forfeitable property described above.



A TRUE BILL

FOREPERSON

PRERAK SHAH
ACTING UNITED STATES ATTORNEY

JOSEPH S. BEEMSTERBOER
U.S. Department of Justice
Criminal Division, Fraud Section
Acting Chief

BRYNN A. SCHIESS
Trial Attorney
Fraud Section, Criminal Division
U.S. Department of Justice
Pennsylvania Bar No. 320654
1100 Commerce Street, Suite 300
Dallas, Texas 75242
Phone: (202) 374-3484
brynn.schiess@usdoj.gov

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

---

THE UNITED STATES OF AMERICA

v.

DAVID M. YOUNG, M.D.

---

INDICTMENT

18 U.S.C. § 1349 (18 U.S.C. § 1347)
Conspiracy to Commit Health Care Fraud
(Count 1)

18 U.S.C. §§ 1035(a) and 2
False Statements Relating to Health Care Matters
(Count 2-4)

(18 U.S.C. § 982(a)(7))
Forfeiture Notice

4 Counts

---

A true bill rendered

                                                                                               *[signature]*
-------------------------------------------------------------------------------------------------------------
DALLAS                                                                                         FOREPERSON

Filed in open court this 8th day of September, 2021.

-------------------------------------------------------------------------------------------------------------
**Summons to Issue**
-------------------------------------------------------------------------------------------------------------

                              *[signature]*
                   ---------------------------------
                   UNITED STATES MAGISTRATE JUDGE
                   No Criminal Matter Pending